GREGG v. GOODRICH & a.

The city councils of a city, when met in convention to declare the election of a mayor, under Pub. Sts., c. 47, ss. 2, 3, may compel the production of the ballots cast for mayor, may examine and recount them, and may declare the result of the election in accordance with the facts disclosed by the examination.

The examination and counting of the ballots may be entrusted to a committee of the city councils.

BILL IN EQUITY.  The opinion states the facts.

*John M. Mitchell* and *Jeremiah J. Doyle*, for the plaintiff.

*Charles J. Hamblett, Edward H. Wason*, and *Frank N. Parsons*, for the defendants.

SMITH, J.  This is a bill in equity for an injunction restraining the defendants, inspectors of election for the city of Nashua, from producing the ballots cast for mayor at the city election on the first Tuesday after the first Monday in November, 1893, and from allowing them to be unsealed, examined, and counted by the city councils.

The bill alleges and the answer admits that the city councils have appointed a joint committee to examine and recount the ballots cast for mayor.  The plaintiff, one of the persons voted for, denies the right of the councils to examine the ballots, or to go behind the returns made to the city clerk.

The duties imposed by statute upon election officers, so far as they need to be stated for the purposes of this case, are,—that the moderator count and make a public declaration of the votes cast for mayor in his ward, and the clerk make a record of the vote as declared (P. S., c. 46, ss. 7, 10, c. 33, s. 27); that a copy of the

record, certified by the moderator, a majority of the selectmen, and the ward clerk, be delivered by the ward clerk to the city clerk within twenty-four hours after the meeting (*c.* 47, *s.* 1); that as soon as the declaration of votes is made, the moderator deliver the ballots to the ward clerk, who is required to seal up, direct, and deliver the same to the board of inspectors; that the inspectors be in session for that purpose, and preserve the ballots for a period of eight months (Laws 1878, *c.* 165, *s.* 8); that the city councils meet in convention on the day appointed by law or ordinance; that the city clerk, having entered upon the record the number of votes given in each ward for every person voted for as mayor, lay before the convention the returns of the votes; and that the convention examine the same and declare elected the person who has the largest number of votes, and cause him to be notified of his election. P. S., *c.* 47, *s.* 2.

If there were no other provisions of law regulating the count and declaration of votes, it would be plain that the duties devolved upon the convention would be ministerial, neither calling for nor permitting any inquiry into the correctness of the vote as counted and declared in the several wards and returned to the city clerk; and any party aggrieved by the counting would be left to his remedy by *quo warranto.* But provision is made by the statute for a contest in the election of mayor. "In case the election of mayor is contested, the city councils in convention shall have power to send for persons and papers, may inquire into the correctness of the returns, and shall hear and receive evidence as to any fraud or misconduct in relation to the election; and for that purpose may adjourn from time to time, not later than the time appointed for the convention of the new city councils. P. S., *c.* 47, *s.* 3.

Whatever the powers thus conferred upon the city councils may be called, it is apparent that their duties are not confined to the mere tabulation of the returns and a declaration of the result as shown by such tabulation. Unless the legislature intended to authorize an investigation into the legality of the election and the correctness of the records of the ward clerks, no reason appears for the enactment of the statute. The familiar rule on the construction of statutes requires such interpretation to be put upon this statute as will make it operative and carry out the apparent legislative intent.

The contest referred to in the statute means something more than an inquiry into the question whether the ward clerks have correctly recorded the result as declared by the moderators, or have returned to the city clerk correct copies of the record. Ample legislation for such purpose has existed for more than fifty years. Laws 1839, *c.* 452; R. S., *c.* 30, *s.* 4; P. S., *c.* 39, *s.* 3. If nothing more was intended, the provision for hearing and receiving evidence as to fraud or misconduct in the election is an idle

one, to which no effect can be given. The city councils as a joint body are clothed with power not only for inquiring into the correctness of the returns, but for passing upon any questions of "fraud or misconduct in relation to the election," and for such purpose may send for persons and papers. The office is an annual one, and a tribunal is created to determine, at least in the first instance, which of two or more candidates shall enter upon and enjoy it. Whether such adjudication is final, or the right of the occupant seated by the city councils may be later inquired into on *quo warranto*, is a question that need not be settled in this proceeding.

The objection that the examination and counting of the ballots cannot be entrusted to a committee of the councils is not well taken. It is not a delegation of delegated authority, in the sense in which the well known maxim is understood. The uniform practice of all legislative bodies to act through committees of their own members, and the universal understanding of the people that such duties may be discharged by a committee, are evidence on the question of the legality of such proceeding. The proceeding is one for convenience merely, the convention reserving to itself the right of final action. Paine Elec., *s.* 797.

We are of opinion that the city councils have the power to compel the production of the ballots in the hands of the inspectors, to examine them when produced, and to weigh the evidence disclosed by such examination in determining the result of the election. The injunction is denied, and the

*Bill dismissed.*

All concurred, except Doe, C. J., who concurred in the result.